### HENRY *et al. v.* McALLISTER.

One who makes a usurious note and secures its payment by executing a deed to realty, the usury not appearing upon the face of the papers, is, as against another whom he induces to purchase the note by representing that it and the deed "are valid and all right" (the purchase being made in good faith and in ignorance of the usury), estopped from setting up the usury in the transaction; nor is such estoppel removed because a former holder of the note had exacted from the maker another promissory note for an additional sum in consideration of an agreement to extend the time of payment of the first note.    If any usury was involved in this exaction, this fact did not in any manner affect the legal *status* of the original note, or of the deed, or make any change in the rights of the maker and the last purchaser with reference to the same.

November 9, 1896.  Argued at the last term.

Complaint on notes.    Before Judge Hart.    Morgan superior court.    September term, 1895.

*Calvin George,* for plaintiffs in error.
*W. R. Mustin* and *H. T. Lewis,* contra.

LUMPKIN, Justice.

This case was before this court at the March term, 1894. See 93 *Ga.* 667.    It comes back upon questions not then

made or presented for adjudication. It now appears that Antoinette Henry and her husband, George Henry, made and delivered to Butler three promissory notes, and that to secure the same the wife conveyed to him, under section 1969 *et seq.* of the code, certain lands. The notes were transferred by Butler to Hunter, and by the latter to McAllister, who brought his action upon the same against the Henrys. The uncontradicted evidence shows that the Henrys, in order to induce McAllister to purchase the notes, represented to him that they, and the deed by which they were secured, were "valid and all right;" and it was proved beyond question that although the notes were usurious, McAllister purchased them in ignorance of this fact, and in the utmost good faith. Upon their face, both the notes and the deed were apparently legal and binding, and bore no trace which could possibly suggest to McAllister even a suspicion that they were infected with usury. The defendants tendered evidence to prove that when Butler transferred the notes to Hunter, the latter required the Henrys to execute and deliver to him a promissory note for $30 in consideration of his extending the time of payment for a specified period; and that this note had also been assigned to McAllister, who instituted an action thereon against the Henrys, which they defeated by showing that the sole consideration of that note was usury. This evidence the court rejected.

We think it apparent that the defendants were estopped from setting up as a defense to McAllister's present action the alleged usury in the original transaction between themselves and Butler. They had induced the plaintiff to part with his money by misleading him into the belief that the notes purchased by him evidenced an honest and legal indebtedness upon their part, and that the security deed was free from objection or attack. Upon the very plainest principles of law and common honesty, they cannot now defeat his action by showing the contrary. If there

ever was a case in which the doctrine of estoppel applies, it is the present. . It comes squarely within the provisions of section 3753 of the code, which declares that courts will not permit parties to aver, or prove, the real truth concerning the subject-matter of controversy, where they have made "admissions upon which other parties have acted, either to their own injury or the benefit of the persons making the admissions," or in "similar cases where it would be more unjust and productive of more evil to hear the truth than to forbear the investigation." In the present case, to allow the defendants to show that the representations they made to McAllister were false, and that, as matter of fact, the instruments they procured him to purchase were tainted with usury, would be to permit them to take advantage of their own wrong.

It is equally clear that the usurious charge made by Hunter, when he became the owner of the original notes, for extending the time of their payment, could not possibly affect the legal status of those notes. While the consideration of the $30 note may have been usury, pure and simple, the fact that he took it could have no bearing in determining the question of the defendants' liability to McAllister upon the original notes which they subsequently induced him to purchase from Hunter. The two transactions were entirely separate and distinct, and it has already been shown that the Henrys were, as to McAllister, estopped from setting up the defense of usury as to the notes now sued upon. The fact that McAllister, as transferee of the $30 note, failed in his effort to collect it by suit, because the defendants succeeded in establishing their plea that its sole consideration was usury, cannot operate to preclude him from recovering upon the notes now sued upon, when he satisfactorily shows to the court that he purchased the same in entire good faith, upon the assurance of the defendants that they were "valid and all right," and was ignorant of the defendants' claim, now for the first time

asserted, that the notes were infected with usury. It is quite probable that McAllister knew, when he purchased the $30 note, the consideration upon which it was based, and if this be true his effort to collect it was very justly defeated by the defendants; but it by no means follows that his right to recover upon the notes which represent an entirely distinct transaction, and which he acquired innocently and in entire good faith, was also adjudicated adversely to him in the suit which he brought against the defendants upon the $30 note. In the absence of any evidence introduced by the defendants in the present action, going to show that McAllister also really knew the consideration upon which the three original notes held by him was based, and was therefore not misled by their representations concerning their validity, he is to be treated as a *bona fide* holder of these notes, without regard to the circumstances under which he acquired the $30.00 note, or the fact that in an entirely different action from the present he failed to establish his right, as a *bona fide* holder thereof, to likewise enforce its collection.

*Judgment affirmed.*